UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:08 CR 356 HEA |
| ) | DDN |
| MICHAEL CAPELTON, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on July 29, 2008.

Defendant Michael Capelton has moved to suppress physical evidence. (Doc. 28.) From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. During May and June 2008, the Pine Lawn, Missouri, Police Department investigated Michael Capelton for illegal narcotics activity. The investigation included controlled purchases of narcotics. Capelton was believed to have residences in both Pine Lawn and the City of St. Louis.

2. On June 3, Pine Lawn police asked St. Louis Metropolitan Police Det. Hal Stone and his partner Det. Mark McMurray to locate Capelton at his St. Louis residence, 6484 Clayton Avenue, Apartment A, because the Pine Lawn police were preparing to execute a search warrant for Capelton's Pine Lawn residence. Prior to June 3, neither Det. Stone nor Det. McMurray had any direct contact with Capelton, although Stone had been told of the investigation before June 3. Also on June 3 the Pine Lawn police told McMurray and Stone about an outstanding arrest warrant for Capelton in the local City of Berkeley and asked them to arrest Capelton on that warrant. They also advised Stone and McMurry

that Capelton had been driving a white four-door rental vehicle. Det. Stone confirmed the existence of the outstanding Berkeley arrest warrant.

3. Thereafter on June 3, Dets. McMurray and Stone went to 6484 Clayton, a two-story structure. The first floor contains businesses and residential apartments on the second floor. Access to the individual apartments on the second floor is by a wooden stairway on the backside of the building. There was a screened-in area outside the entry door to each apartment.

4. Dets. Stone and McMurry arrived at 6484 Clayton and set up surveillance of the rear of the building. They saw a car matching the description of Capelton's car parked on the south side of the building. From their parked, unmarked police car they saw the door to Capelton's apartment.

5. A short time after setting up their surveillance, the detectives saw Capelton walk out of the door of his apartment and lock the door. They saw him descend the stairs and go to his car. Det. McMurry saw Capelton lock the door, but did not see him leave the key to the apartment.

6. At that time, Det. Stone drove the police car to Capelton's car, and the detectives intercepted him before he entered the vehicle. The detectives, although not in uniform, displayed their badges on chains around their necks. Det. Stone placed Capelton under arrest pursuant to the Berkeley warrant and handcuffed him. Stone then searched Capelton, finding and seizing a loaded gun in his waistband and substances suspected to be cocaine base and heroin in his left pocket. (Gov. Ex. M2.)

7. Det. Stone then advised Capelton of his constitutional rights to remain silent and to counsel.

8. Next, Det. Stone asked Capelton whether he would consent to a search of his residence. Capelton said, "You can, but I can't get in because I don't have a key." Capelton said they would have to wait for his girlfriend to return home and unlock the door.

9. Det. Stone then filled out a consent to search form and gave it to Capelton. The form identified the apartment address, 6484A Clayton, and the persons to whom consent to search was to be granted,

Det. Hal Stone and Det. Mark McMurry.  The preprinted portion of the form stated that Capelton understood that he had the right to refuse to grant consent to search his residence, that he was not threatened or coerced into granting his consent, and that he was not promised anything in return for his consent.  Capelton, was then approximately 30 years of age, appeared to be of normal intelligence, and did not appear intoxicated or otherwise impaired.  Capelton never said he did not understand the form.  His handcuffs were removed.  Capelton reviewed the form, asked no questions about it, and signed it at 2:10 p.m.  (Gov. Ex. M1.)  Capelton was then re-handcuffed.  The conversation relating to the consent to search took approximately ten minutes.  The detectives then notified their sergeant who came to the scene and took custody of Capelton.

10. The two detectives then went to the door of 6484A Clayton. They knocked and announced their presence. They received no response. Next, they examined the door and found it locked with a deadbolt lock, which required a key to both lock and unlock it from the outside. Because of the nature of this deadbolt lock, the officers surmised that Capelton could not have locked the door without a key. Det. Stone again asked Capelton if he was able to get into his residence. Capelton again denied any ability to unlock the door and repeated that the only way that the officers or he could gain access to the residence was to wait for his girlfriend to arrive and unlock the door.

11. The detectives searched the screened-in area around the door and Det. McMurry located a key above the screen door. The detectives showed the key to Capelton and told him where they found it. Capelton acknowledged that the key would in fact unlock the door to his residence. Capelton said nothing to withdraw his consent, nor did he demand that the detectives wait for his girlfriend's arrival before searching the residence.

12. The detectives then unlocked the door to Capelton's residence and entered. The detectives searched the kitchen and found a plastic bag containing suspected cocaine base, a plastic bag containing suspected cocaine powder and cocaine base, suspected marijuana, two digital scales,

gelatin capsules, and an unloaded pistol.[1]  They searched the bedroom and found an unloaded pistol.  In the living room the detectives found a two-shot pistol.  The pistol contained one live round.[2]

13.   After the conclusion of the search, the sergeant took Capelton to the police station.  Also, an officer made a telephone call for Capelton so that someone could look after a child who needed to be picked up.

## **DISCUSSION**

At the hearing, defendant advised that he did not contest the admissibility of his oral statements to the police. Rather, his motion to suppress argues that the physical evidence seized on June 3, 2008, should be suppressed.

First, he argues that the items seized from his person should be suppressed because he was unlawfully arrested.  The record is clear and undisputed that defendant was arrested by the St. Louis police detectives in a public place outside defendant's residence pursuant to their knowledge of an outstanding arrest warrant for defendant issued by the City of Berkeley, Missouri.  It is irrelevant that the arresting officers did not have a copy of the warrant with them when they arrested him. Before going to defendant's residence in aid of the Pine Lawn police investigation, Det. McMurray confirmed the existence of the outstanding arrest warrant.  Thus, defendant was lawfully arrested. Steagald v. United States, 451 U.S. 204, 213 (1981); Bowers v. Coiner, 309 F. Supp. 1064, (D.C.W.Va. 1970) (unnecessary for arresting officers to have a fugitive arrest warrant in their possession at the time of the arrest).

The seizure of the firearm and the controlled substances from defendant's person was accomplished incident to the lawful arrest and, thus was not unreasonable under the Fourth Amendment. New York v.

---

[1] The written summary of items seized lists the gun found in the kitchen as a loaded pistol, but Detective McMurry testified that the pistol found in the kitchen was unloaded.  (Gov. Ex. M2.)

[2] The written summary of items states that a two-shot Derringer firearm (loaded) was found in the living room.  (Id.)

- 4 -

Belton, 453 U.S. 454, 461 (1981); United States v. Edwards, 415 U.S. 800 (1974).

The seizure of the items from inside defendant's apartment residence should not be suppressed, because the search was reasonable under the Fourth Amendment because it was authorized by the defendant's voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). The voluntariness of the consent to search is indicated by defendant's cooperation with the officers and his uncoerced signing of the consent to search form. United States v. Almendares, 397 F.3d 653, 661 (8th Cir. 2005). Further, the form advised defendant he did not have to consent, he was of a mature age, he appeared to be of normal intelligence, and he did not appear to be intoxicated. United States v. Watson, 423 U.S. 411, 425 (1976); Bustamonte, 412 U.S. at 226; United States v. Jimenez, 478 F.3d 929, 932 (8th Cir. 2007).

For these reasons,

**IT IS HEREBY RECOMMENDED** that the motion of defendant Michael Capelton to suppress evidence (Doc. 28) be denied.

The parties are advised they have until September 16, 2008, to file written objections to this Order and Recommendation. The failure to file timely, written objections will waive the right to appeal issues of fact.

### ORDER SETTING TRIAL DATE

At the direction of the District Judge,

**IT IS HEREBY ORDERED** that the jury trial of this action is set for October 14, 2008, at 9:00 a.m.

    /S/   David D. Noce
UNITED STATES MAGISTRATE JUDGE

Signed on August 29, 2008.